NOT DESIGNATED FOR PUBLICATION

No. 128,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER MICHAEL WARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Dylan J. Pryor*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., HURST, J., and PAULA HOFAKER, District Judge, assigned.

PER CURIAM: Christopher Michael Ward was convicted of felony theft and ordered to pay restitution to the victim and their insurer. Ward first appeals his conviction of felony theft, arguing the State failed to present sufficient evidence that the value of the stolen property met the requisite minimum value to support the felony level conviction. He also appeals the part of the district court's restitution order requiring him to pay restitution to an insurance company. Ward claims insurance companies do not experience loss when they pay the claims of insureds. This court agrees with Ward as to his first claim but affirms the district court on his second.

1

The felony theft conviction is reversed and remanded with directions for the district court to enter a conviction of misdemeanor theft and sentence the defendant accordingly. In all other respects, the district court's judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2022, while trying to sell a house in Wichita, the owner noticed something wrong with the air conditioner. According to the owner, the outdoor portion of the air conditioner had been "torn up," in that the coil was removed and the components that housed the coil were scattered on the ground. Due to previous vandalism, the owner had set up a trail camera for security purposes. So, after the incident, the owner reviewed the images taken by the trail camera and provided photographs of a person disassembling the air conditioning unit to law enforcement.

Through its investigation, the Wichita Police Department received an anonymous tip that identified the suspect as Christopher Ward. After receiving the tip, the investigating officer found a photograph and a video from a police incident with Ward that occurred in May 2022 and believed that Ward looked similar to the individual in the trail camera photographs. The officer also searched a database of scrap metal sales to see if Ward sold any scrap metal from the air conditioner unit. He found that Ward's name and driver's license were recorded when he sold metal at a facility in Wichita on July 9, 2022. A receipt showed that Ward sold aluminum copper radiator scrap, copper #1, and copper #2, on July 9, 2022, at around 12:40 p.m. to the facility. Later, the officer met Ward in person to compare his appearance to that of the person on the trail camera. Based on the totality of the circumstances, the officer believed there was probable cause to conclude that Ward was involved in the incident.

The State charged Ward with felony theft of property valued between $1,500 and $25,000 under K.S.A. 21-5801(a)(1)(b)(3) based on the theft of the air conditioner parts.

The case proceeded to a jury trial, and on May 29, 2024, the jury found Ward guilty of felony theft. At sentencing, Ward admitted to his criminal history which included 45 prior convictions, including 21 convictions for theft and 15 convictions for burglary. The district court found that Special Rule 29, a rule concerning a defendant with a history of 3 or more prior thefts, applied.

In support of the motion for a dispositional departure, Ward's attorney asserted that Ward "took responsibility today and did not want to contest the restitution, even though it's quite a large amount, because he does want to get that paid off." Ward also told the district court that he planned to pay the restitution and that he had a job. He promised that if the court gave him the opportunity through a sentencing departure, he would maintain employment and make monthly payments to the restitution.

The district court denied Ward's request for a departure, stating that Ward was a "serial thief and a serial burglar." The court sentenced Ward to 17 months in prison for the theft conviction, subject to 12 months postrelease supervision. The court ordered restitution—"as requested by the State and not objected to by the defense"—of $5,000 and $5,298, respectively, to the victim and the insurance company.

Ward timely appealed.

DISCUSSION

On appeal, Ward first argues there was insufficient evidence to prove felony theft. Specifically, he asserts that the State failed to present evidence of the fair market value of the stolen property. In his second claim, Ward argues the district court erred in ordering him to pay restitution to an insurer.

3

## I.    INSUFFICIENT EVIDENCE OF FELONY THEFT

When reviewing a claim that the State presented insufficient evidence to support a conviction, this court looks to the evidence in the most favorable light to the State to determine "whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). Ward was convicted of felony theft, defined as "[o]btaining or exerting unauthorized control over property or services" when "done with [the] intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." K.S.A 21-5801(a)(1). The classification and severity level of a theft conviction is established by the minimum value of the taken property. Ward was convicted of a level 9 nonperson felony which was defined as "[t]heft of . . . property or services of the value of at least $1,500 but less than $25,000." K.S.A. 21-5801(b)(3).

The statute defines the value of the taken property as "the value of the property," and the Kansas Supreme Court has explained that "[t]he value to be used in determining whether theft is a felony or misdemeanor is the fair market value of the property." *State v. Owens*, 248 Kan. 273, 285, 807 P.2d 101 (1991); see also K.S.A. 21-5801(c)(5).

Ward asserts that none of the witnesses at trial testified about the value or fair market value of the stolen property—that is the air conditioner coil and some copper— and that none of the State's exhibits showed its fair market value. In response, the State appears to argue that the value should be determined by the replacement cost because Ward's theft left the air conditioner nonfunctional. While that statement seems logical, the State provides no legal authority supporting that contention, and the argument is inconsistent with the elements of the crime charged.

At trial, the owner testified that the coil was removed from his air conditioner and that the components that would house the coil were knocked onto the ground. The owner

4

testified that an HVAC repair company estimated the cost to repair the air conditioner to be about $10,800. The owner then explained the options for repairing the unit, which included replacing just the outdoor unit, which he said would have been "extremely expensive," or replacing both the indoor and outdoor portions of the air conditioner. According to the owner, the downside to just replacing the outside portion of the unit was that it would not come with a warranty. Therefore, the owner replaced both the outside and inside unit so that it would have a warranty for the new homeowner.

A salesperson for the HVAC company also testified about the estimate to repair the air conditioner and said the total estimate was $10,298. The salesperson explained that the homeowner had "Carrier's highest-end heat pump that they made," and that the estimate was for replacement of the same equipment. The salesperson explained that when he looked at the homeowner's outdoor unit, it was in pieces and "[t]here was no way to salvage it at all." When the company replaced the unit, they had to modify it to accept a new air conditioner, but this was not an upgrade; it was a replacement of what was already at the residence. He stated that with no labor, the cost on the air conditioner unit would have been approximately $6,200-$6,300. He also explained that installation required city permits and certification in heating and air conditioning repair.

The salesperson explained that while the outside shielding for the air conditioner was still there, it was in pieces and the main component taken (the coil) was the part that made it run. He did not know the cost of the coil individually. He also confirmed that the $10,298 estimate was an estimate to "replace the cost of what was taken" from the AC unit. The receipt from the recycling company where Ward sold the aluminum copper radiator scrap on July 9, 2022, shows that Ward received $47.50, for aluminum and copper, $72.50 for copper #1, and $50.35 for copper #2.

No doubt, Ward's actions damaged the entire air conditioner. However, the State did not charge Ward for damage to property—but rather for theft of property. See K.S.A.

5

21-5813(a)(1) (defining criminal damage to property as "[k]nowingly damaging, destroying, defacing or substantially impairing the use of any property in which another has an interest without the consent of such other person"). But see K.S.A. 21-5801(a)(1) (defining felony theft as "[o]btaining or exerting unauthorized control over property or services"). Therefore, the evidence necessary to determine the degree of theft must relate to the value of the property taken, not the property damaged. See K.S.A. 21-5801(b)(3) (classifying the severity of the theft for which Ward was charged as the value of the taken property being at least $1,500).

While there appears to be some statutory authority related to the value of stolen "regulated scrap metal," neither party addressed this here, and the State did not present evidence at trial that the taken property constituted regulated scrap metal. See K.S.A. 21-5801(c)(5) (defining value). The definition of value in the theft statute includes a provision for regulated scrap metal:

> "[T]he value of the property or, if the property is regulated scrap metal or a remote service unit, the cost to restore the site of the theft of such regulated scrap metal or remote service unit to its condition at the time immediately prior to the theft of such regulated scrap metal or remote service unit, whichever is greater." K.S.A. 21-5801(c)(5).

Regulated scrap metal is defined as an item, in any form, for which the purchase price described in K.S.A. 50-6,110 and 50-6,111, and amendments thereto, was primarily based on the content of:

> "(i) Aluminum, except that aluminum shall not include food or beverage containers;
> (ii) copper." K.S.A. 50-6,109(2)(A)(i-ii).

The State put on evidence that Ward sold the air conditioner coil as scrap metal as an "aluminum copper radiator," but did not assert that the property met the definition of

6

regulated scrap metal. If the taken property had met that definition, then the value would have been "the cost to restore the site of the theft . . . to its condition at the time immediately prior to the theft," or the value of the property, whichever is greater. K.S.A. 21-5801(c)(5). The State's failure to pursue this theory precludes this court's review of its applicability.

The evidence is that Ward took only part of the air conditioner, the coil and associated parts, and did not take the entire air conditioner. Therefore, to determine the classification of the type of theft committed, the State was required to prove the value of the coil and associated parts taken. See, e.g., *State v. Stephens*, 263 Kan. 658, 665-66, 953 P.2d 1373 (1998). While *Stephens* is factually distinguishable as it involves theft by deception, in it the Kansas Supreme Court explained that the value of stolen property for purposes of determining the classification of a theft conviction is the value of the property taken; the value of what the perpetrator received in exchange for the taken property or the extent of the victim's loss was immaterial. 263 Kan. at 665-66; see also *State v. Watson*, 39 Kan. App. 2d 923, 933, 186 P.3d 812 (2008) (explaining that "the estimated future value of the stolen equipment was clearly irrelevant to show the value of the equipment [the defendant] was accused of stealing"). In Kansas, the property owner is permitted to testify to the value of stolen property, but here, the owner testified to the value of the entire air conditioner and the cost to replace the entire air conditioner—not the value of the stolen parts of the air conditioner. See *State v. Moss*, 221 Kan. 47, 49, 557 P.2d 1292 (1976) (presumption that the property owner would know the value of the property).

Courts in other states have addressed similar facts, where the State presented evidence of replacement cost and not the value of the taken property. See, e.g., *Baylor v. Commonwealth*, 55 Va. App. 82, 88-89, 683 S.E.2d 843 (2009). In *Baylor*, the court explained that the government failed to present evidence to allow the fact finder to infer the value of the property taken, catalytic converters, but only presented evidence of the

7

cost to replace the catalytic converters. Therefore, the court found there was insufficient evidence to establish the value threshold to sustain the grand larceny conviction. 55 Va. App. at 90.

The value of the property stolen—not the cost of harm to the victim—defines the value for purposes of classifying the severity level of a theft conviction. In contrast, restitution can include the "damage or loss" caused by the defendant's crime. K.S.A. 21-6604(b)(1). For restitution stemming from a theft, "such damage or loss shall include the cost of repair or replacement of the property that was damaged." K.S.A. 21-6604(b)(1)(B). However, the restitution calculation cannot be used to prove an element of a crime where that calculation is not a component of the offense. See *State v. Allen*, 260 Kan. 107, 115-16, 917 P.2d 848 (1996).

In *Allen*, the court noted that an element of the computer crime charged was similar to a larceny or theft charge where "the extent of the deprivation determines the severity level of the crime" and that because the restitution calculation can include "other costs in connection with the theft" beyond the fair market value, the "amount of restitution can be greater than the damages used to classify the crime." 260 Kan. at 115-16. Accordingly, the court refused to use the State's restitution calculation to determine whether the State could prove the elements of the crime charged. 260 Kan. at 116. Moreover, while the fair market value of the taken property may not always be determinable for the purpose of valuing the stolen property, the State has not made that argument here. See, e.g., *State v. Robinson*, 4 Kan. App. 2d 428, 431, 608 P.2d 1014 (1980) ("[W]here an item or items constituting the res of the theft has no fair market value, or where the value is peculiar to the owner from whom the property was stolen, then its 'money' value to the owner is a proper test.").

The State was required to prove each element of the crime charged beyond a reasonable doubt. *Mendez*, 319 Kan. at 723. Here, an element of the charged theft offense

included the fair market value of the taken property. The State failed to present evidence from which the fact finder could infer the value of the air conditioner coil or other parts taken from the air conditioner. Ward's conduct caused the property owner to suffer damages in excess of $1,500 related to replacing the entire air conditioner, but that is not the same as the value of the taken property for purposes of proving felony theft occurred.

Because the State failed to present sufficient evidence that the value of the taken property reached the requisite felony level, Ward's conviction for felony theft must be reversed. The evidence was sufficient to prove theft, just not felony theft. Because the State put on evidence of stolen private property, and because of the presumption that all property has some inherent value, Ward's conviction must be for misdemeanor theft. Ward's conviction for felony theft is reversed. This case is remanded for the district court to downgrade Ward's conviction to misdemeanor theft and sentence him accordingly. See *State v. Charles*, 298 Kan. 993, 1001, 318 P.3d 997 (2014) (explaining the procedure when the State fails to prove felony theft but puts on evidence of stolen private property); *State v. Piland*, 217 Kan. 689, 693, 538 P.2d 666 (1975) (reversing felony theft and remanding for misdemeanor conviction).

II.    WARD'S RESTITUTION CLAIM FAILS

At sentencing, the district court ordered Ward to pay restitution of $5,000 to the property owner and an additional $5,298 to the insurer. On appeal, Ward does not challenge the actual restitution calculation but merely contends that the district court erred in awarding any restitution to an insurer because the insurer suffered no actual loss.

The parties agree that Ward did not object to the district court's restitution award. Generally, issues not raised before the district court cannot be raised for the first time on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). However, there are three widely accepted exceptions to that general prohibition: (1) the newly asserted theory

9

involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Ward argues that the first exception applies because whether an insurer is entitled to restitution under the law is a question of law over which this panel's review is unlimited.

Ward's argument for review for the first time on appeal ignores the obvious facts necessary for its full evaluation. Ward claims the restitution payment to the insurer results in the insurance company being "doubly compensated: first, by the policyholder paying premiums to the insurance company, and second, by the defendant paying restitution." Yet there are no facts in the record of the premiums paid to the insurer for the coverage at issue. There are also no facts related to other payments the insurer may have made to the insured related to those premiums. Additionally, there are no facts related to the insurer's cost to administer the insurance coverage under which the insurer made payment. To the extent Ward argues that the insurer suffered no loss for which restitution can compensate, the record simply lacks facts upon which this court could rely to analyze that would support that argument.

However, to the extent Ward argues that the applicable restitution statute does not permit payments to third-party insurers as a pure question of law, that question can be reviewed for the first time on appeal. The restitution statute provides that "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 21-6604(b)(1). Regarding a theft conviction, "damage or loss shall include the cost of repair or replacement of the property . . . reasonable labor costs of any kind, reasonable material costs of any kind and any reasonable costs that are attributed to equipment that is used to abate or repair the damage to the property." K.S.A. 21-6604(b)(1)(B). This court exercises unlimited review over the

interpretation of the underlying restitution statutes. *State v. Union*, 319 Kan. 214, 220, 553 P.3d 320 (2024).

The restitution statute's plain language does not prohibit restitution to a third-party insurer. Rather, the statute permits the district court to order restitution related to the loss or damage caused by the defendant's criminal conduct. As Ward acknowledges, the Kansas Supreme Court has held that restitution may be awarded to a secondarily or tertiarily aggrieved party who compensated the original aggrieved party. *State v. Beechum*, 251 Kan. 194, Syl. ¶ 3, 833 P.2d 988 (1992). Additionally, panels of this court have rejected similar claims and determined that the district court may order restitution to be paid to an insurer. See, e.g., *State v. Robison*, 58 Kan. App. 2d 380, Syl. ¶ 8, 469 P.3d 83 (2020) ("Neither K.S.A. 2017 Supp. 21-6604[b][1] nor K.S.A. 2017 Supp. 21-6607[c][2] prohibit a district court from awarding restitution to an insurance carrier that has suffered damage or injury as a result of the defendant's crime."); *State v. Hand*, 45 Kan. App. 2d 898, Syl. ¶ 3, 257 P.3d 780 (2011) ("A third party, including an insurance company, paying a crime victim's financial loss typically becomes an aggrieved party entitled to restitution payments from a convicted criminal . . . ."), *rev'd on other grounds* 297 Kan. 734, 304 P.3d 1234 (2013). Therefore, the restitution statute does not prohibit the district court from ordering restitution for loss or damage under K.S.A. 21-6604(b)(1) to be paid to an insurer.

However, if Ward intends to assert a claim that the particular insurer here suffered no loss or damage because of its acceptance of insurance premiums related to the coverage, that is an issue that requires further fact development and cannot be addressed for the first time on appeal. The Kansas Supreme Court has accepted review of a case related to this issue where a panel of this court upheld a district court's order that a defendant pay restitution to a third-party insurer. See *State v. Mason*, No. 125,523, 2024 WL 3466480, at *8 (Kan. App. 2024) (unpublished opinion) ("Nothing in the applicable statutes or other Kansas law prevents an insurance company from receiving restitution

11

payments for claims paid as a result of a defendant's criminal acts."), *rev. granted* 320 Kan. 866 (2025). The court's decision has not yet been issued. As such, the district court's restitution order is affirmed.

CONCLUSION

The State failed to present sufficient evidence that the value of the property Ward was convicted of unlawfully taking met the requisite minimum to establish a felony conviction. Therefore, Ward's felony theft conviction is reversed and remanded with directions that the district court enter a misdemeanor theft conviction and sentence the defendant accordingly. However, this court finds no error in the district court's restitution order, and as such, that is affirmed.

Affirmed in part, reversed in part, and remanded with directions.